■ The People of the State of New York, Respondent, v Ruben Acosta, Appellant. [661 NYS2d 3] —Judgment, Supreme Court, Bronx County (Frank Diaz, J., at suppression hearing; Efrain Alvarado, J., at trial and sentence), rendered July 7, 1995, convicting defendant, after trial by jury, of criminal possession of a controlled substance in the fourth and seventh degrees, and sentencing him, as a second felony offender, to concurrent terms of 5 to 10 years and one year, respectively, unanimously affirmed.

While on patrol in a drug-prone area, Sergeant Jose Rosado and Officer Ernest Lentini observed defendant with a grey object in his hand, which he placed behind his back after looking in the officers' direction. Based on the way defendant held the object at his side, the officers believed it to be a gun. (It was later found to be a cellular phone.) Then the officers observed an unapprehended man approach defendant and saw defendant hand the man a square shaped package wrapped in magazine paper, called a "brick", which they testified, based on their experience, is a common way of packaging heroin. The defendant then entered 456 East 138th Street. Officer Lentini and Sergeant Rosado went to the door of this building while another officer, Paul Grace, pursued the unidentified male, who fled into another building. The officers looked through a window in the door of 456 and observed defendant in the lobby stuffing other "bricks" and money into a mailbox, less than two feet from them. Sergeant Rosado kicked the door down, entered the building and found 179 glassines of heroin and over $4,000 inside the mailbox and on the floor.

The hearing court's denial of defendant's motion to suppress the physical evidence was proper and supported by the record. The officers reasonably believed the object defendant held to be a gun and the fact that he placed it quickly behind his back heightened that suspicion. As they continued to watch, they saw defendant hand another man a package which, as seasoned observers of the drug scene, they identified as a "brick" of heroin (*People v Alexander*, 218 AD2d 284, *lv denied* 88 NY2d 964, 965 [a tinfoil packet of a size and shape commonly associated with cocaine packaging may be deemed a " 'hallmark' " of drug activity even in the absence of any observed drug sale or exchange of money]). At this point, the officers had reasonable suspicion to believe criminal activity was afoot (*People v De Bour*, 40 NY2d 210, 223), if not probable cause to believe that a crime was being committed at that time (*supra*). In any event, the officers simply followed defendant to 456 where, through a clear window, they observed him stuff similar bricks into a

mailbox, and, certainly, at that time, they had probable cause to believe defendant was committing a crime. While defendant claimed the drugs in the mailbox did not belong to him, the hearing court was entitled to resolve credibility issues in favor of the People. Likewise, the conflicting testimony concerning the appearance of the door at 456 East 138th Street was properly decided in the People's favor. The court observed the door on a visit about one year after the incident, and while the window on 456 was different at that time, the court noted for the record that the doors of adjacent buildings all conformed to the officers' description and that the 456 door might have been replaced after the Sergeant kicked it down during the arrest. Contrary to the defense contention, the court did *not* find that if the door was the same one, the Sergeant could not have seen what he testified to. The Judge observed that: "I could not see because of my height, so it occurred to me since the sergeant was much taller I should stand on a milk crate or something and try to look inside the vestibule, the small vestibule to see whether I could see anything. And I did that. The mailboxes were said to be to the left by the sergeant during his testimony and I *was* just barely able to make out the mailboxes by cupping my hands around my eyes so that I could shield the light, so I thought that this was a totally different door that I was looking at from the door described by the sergeant and I thought that *perhaps* since the door had been broken down, it had been replaced with this door" (emphasis added).

Further, while the defense counsel then noted he had not rested, the court noted it was "just telling for the record that that's a factual recitation of what I observed." The court then continued with the hearing and heard the defense side before making its decision.

The defendant also contends that he was deprived of his right to a fair and impartial suppression hearing by the intense and excessive questioning by the hearing court. A review of the record shows that while the court took an active role in the hearing, the court asked meaningful questions in order to clarify issues of credibility and develop significant facts. Further, there was a complete lack of any showing that defendant was prejudiced by the court's conduct. Finally, it must be emphasized that the questioning took place during a suppression hearing, where the court is the trier of the facts. Any "risk of prejudice was, in any event, attenuated if not nonexistent since there was no jury" (*People v Mays*, 197 AD2d 361, citing *People v Gilbert*, 103 AD2d 967, 968 [where any prejudice arising from court questioning of defense witnesses in a non-jury

trial was "nonexistent"]). Concur—Rosenberger, J. P., Wallach, Nardelli and Rubin, JJ.